DAVIS *v.* KRAMER BROS. FREIGHT LINES, INC.

1. CONTRACTS—CHANGE OF TERMS.

It is necessary to determine first what the terms of a contract are in order to recognize a change in the terms.

2. SAME—CONSTRUCTION.

The meaning of a word used in a contract must be ascertained in the light of all of the relevant circumstances, not excluding, where helpful, the experience of courts and linguists, and including the meanings accepted by the parties.

3. SAME—CONSTRUCTION.

Words used in contracts are not necessarily transparent and unchanging but may vary greatly in color and content according to the circumstances and the time in which used.

4. SAME—PRACTICAL INTERPRETATION.

A practical interpretation of the terms of a contract by the parties is admissible as an aid in the determination of the meaning to be given legal effect, but a one-sided, self-serving interpretation by one party without acquiescence by the other party is ineffective to establish such practical interpretation.

5. PLEADING—MOTION TO DISMISS.

A motion to dismiss for failure to state a cause of action comprehends all objections formerly raised by demurrer, pleas in abatement, or pleas to the jurisdiction (Court Rule No 18 [1945]).

---

REFERENCES FOR POINTS IN HEADNOTES

[1] 12 Am Jur, Contracts § 427.
[2] 12 Am Jur, Contracts §§ 247–249.
[3] 12 Am Jur, Contracts § 247.
[4] 12 Am Jur, Contracts § 249.
[5] 41 Am Jur, Pleading § 330.
[6] 41 Am Jur, Pleading § 332.
[7] 41 Am Jur, Pleading § 95.
[8] 1 Am Jur, Actions § 2.
[9] 1 Am Jur, Actions § 3.
[10, 11] 41 Am Jur, Pleading § 331.

6. SAME—MOTION TO DISMISS—WELL-PLEADED FACTS TAKEN AS TRUE.

All facts well pleaded must be taken as true for the purposes of a motion to dismiss such pleading for failure to state a cause of action (Court Rule No 18 [1945]).

7. SAME—CONTRACTS.

A declaration which properly alleged the making of a contract, its breach, and damages flowing therefrom would state a cause of action.

8. SAME—CAUSE OF ACTION.

A cause of action, for purposes of a motion to dismiss a declaration, means merely the pleaded concurrence of facts giving rise to the obligation sought to be enforced against the defendant.

9. SAME—JUDGMENT—EVIDENCE—DEFENSES.

A plaintiff's statement of a cause of action must not be confused with a plaintiff's right to judgment since the latter depends upon proof adduced and upon what defenses can be established against the cause of action asserted.

10. TRIAL—MOTION TO DISMISS—AFFIDAVITS—SUFFICIENCY OF DEFENSES.

Whether or not a defendant's defenses are ample is not a matter that is triable upon affidavits upon a motion to dismiss (Court Rule No 18 [1945]).

11. CONTRACTS—CONSTRUCTION—MOTION TO DISMISS—AFFIDAVITS.

Motion to dismiss truck lessor's action against lessee for sums claimed to be due under contract of lease *held*, to have been improperly granted, where plaintiff's counter affidavit controverted defendant's interpretation of the contract (Const 1908, art 2, § 13; Court Rule No 18, § 3 [1945]).

Appeal from Wayne; Culehan (Miles N.), J. Submitted June 7, 1960. (Docket No. 7, Calendar No. 48,522.) Decided September 16, 1960.

Assumpsit and case by Jack Davis, in his own behalf and as assignee of 5 others, against Kramer Bros. Freight Lines, Inc., a Michigan corporation, for sums due on oral contracts and leases of operating equipment. Dismissed on motion. Plaintiff appeals. Reversed and remanded.

*Hugh K. Davidson* and *J. Connor Austin,* for plaintiff.

*Devine, Kent & Devine,* for defendant.

SMITH, J.   This case involves the interpretation of a contract.

The declaration charged that plaintiffs had entered into an oral contract with defendant, according to the terms of which plaintiffs were to be paid 65% of the gross revenue derived from transporting freight over highways, that they had performed the work contemplated, and that deductions had been made improperly from their earnings, in total amount, $950,000.[1]

It was further pleaded that, "from time to time, lease contracts in furtherance of said oral agreement" had been entered into.   One of such contracts was set forth as an exhibit.   It provided specifically how compensation should be computed.[2]   The declaration charged, however, that unauthorized deductions (listing them by types) had been made from

---

[1] Actually, one plaintiff appeared pleading assignments from other persons of their claims.

[2] "The company hereby agrees that it will credit to the lessor a gross sum of 65% of the freight revenue the company shall receive from each load of freight transported on or by the vehicle leased hereunder.   The lessor agrees that from such gross credit there shall be deducted the company's charges for picking up and delivering the freight transported at rates established and published by the company at each point of origin and destination.   The equipment leased hereunder shall be used by the company at its discretion to pick up freight at origin or deliver same at destination without additional compensation to lessor.   The compensation paid hereunder shall be the entire compensation for equipment rental, driver's wages, layover time, breakdown time, lodging allowance, vacation pay and any other payment or remuneration due or payable under any union contract.   The total compensation paid during the existence of this lease shall equal or exceed the minimum compensation required to be paid under the particular union contract applicable.

"Lessor further agrees that should any power unit leased hereunder transport cargo in any trailer not the property of the lessor, that the lessor shall pay the company 3 cents per mile for each single-axle trailer pulled by such power unit and 4 cents per mile for each tandem-axle trailer pulled by such power unit."

sums due plaintiffs, by reason of which plaintiffs claimed damages.

Defendant thereupon moved to dismiss the declaration. It was asserted in the motion, supported by affidavits, that the items for which plaintiffs claimed reimbursement were "clearly excluded by the written instruments between the parties," and hence there was no issue of fact before the court "because plaintiffs are barred by the terms of their agreement from maintaining this action." It was asserted, in addition, that payments had been "received and accepted by plaintiffs without objections," in pursuance of accounts stated, and hence that "no further liability" rested upon the defendant.

Counter affidavit was filed, in response to which defendant filed answer controverting the interpretations placed upon the contract in the counter affidavit, urging that defendant's motion to dismiss be granted. After argument upon the motion it was granted, the court holding that, without charging fraud, "the plaintiff now is attempting to change the terms of the lease, or to place a different interpretation upon the same than has been applied in the past during the years of operation thereunder."

It will be unnecessary to discuss in detail all of the claims of improper deductions, since all involve the same legal principles. Plaintiffs assert, for example, that tolls paid by them are nowhere covered in the agreement and, since the defendant could specify the routes to be taken, it was "never intended that bridge and highway tolls should be charged to the lessors." Defendant replies that these are included within the words "operating costs" and thus to be assumed by the lessors. Plaintiffs reply that operating costs were meant only "to include such things as gasoline, oil, and maintenance of equipment." So the debate goes, not only as to this item, but others.

The trial court took the position that plaintiffs were "trying to change the terms of the contract." But before we can recognize a change in the terms of a contract we have to determine what the terms are. The initial issue on the contract is a matter of the interpretation of the words used. We know that a word, to use Mr. Justice Holmes' expression, is "flexible."[3] Its meaning must be ascertained in the light of all of the relevant circumstances, not excluding, where helpful, "the experience of courts and linguists,"[4] and including, as well, the meanings accepted by the parties. Thus, even the "dollar" in a promissory note cannot be taken as clear and definite under some circumstances;[5] nor, indeed, as our brothers in Minnesota have pointed out, the word "wife."[6] The difficulties inherent in the rule that we cannot disturb a "plain" meaning are discussed by Professor Wigmore.[7] The preoccupation of some with the search for words with fixed and immutable meanings recalls the experience of the brother of Ali Baba, who forgot the word "sesame" and was thus unable to open the door to safety.[8] Today words themselves are not so powerful, for we are well aware that words are not "transparent and unchanged," but "may vary greatly in color and content according to the circumstances and the time in which [they are] used."[9]

But, the defendant continues, the parties themselves have for many years acquiesced in interpretations of the contract at variance with those now asserted by plaintiffs. There is no doubt that evidence

[3] *International Stevedoring Co.* v. *Haverty,* 272 US 50, 52 (47 S Ct 19, 71 L ed 157).

[4] 3 Corbin, Contracts, § 535, at p 16.

[5] *Thorington* v. *Smith,* 75 US (8 Wall) 1 (19 L ed 361).

[6] *In re Estate of Soper,* 196 Minn 60, 69 (264 NW 427).

[7] 9 Wigmore, Evidence (3d ed), §§ 2461, 2462.

[8] 9 Wigmore, Evidence (3d ed), § 2461, at p 187.

[9] *Towne* v. *Eisner,* 245 US 418, 425 (38 S Ct 158, 62 L ed 372, LRA1918D, 254).

of practical interpretation by the parties is admissible as an aid in the determination of the meaning to be given legal effect. But the key word in this sentence is in the plural, "parties." A one-sided, self-serving interpretation by one party is of no help in interpretation. Acquiescence by the other party is required to establish a practical construction by the parties and this is precisely the thrust of appellants' claim of error. "The plaintiff and other brokers, fleet owners and owner-operators," states the affidavit in opposition to the motion to dismiss, "complained continuously of their treatment and the construction attempted to be placed upon said leases, and never acquiesced in the defendant's construction of the contract."

We have developed the above in some detail in order that the error of the court may be made clear. A motion to dismiss for failure to state a cause of action is manifestly within Court Rule No 18 (1945), which rule comprehends all objections formerly raised by demurrer, pleas in abatement, or pleas to the jurisdiction.[10]

Upon the motion to dismiss for failure to state a cause of action, all facts well pleaded must be taken as true for the purposes of the motion. Here the declaration properly alleged the making of a contract, its breach, and damages flowing therefrom. If the facts were as plaintiffs alleged (and for the purposes of this motion we must assume that they are), plaintiffs clearly have a cause of action.

A caveat: "cause of action" is a tricky expression. It is not susceptible of a single, all-inclusive definition since its meaning depends upon the context in which it is used. In our context (for purpose of a motion to dismiss for failure to state a cause of action) it means merely the pleaded concurrence of facts giv-

---

[10] See Honigman, Michigan Court Rules Annotated, pp 147, 148.

ing rise to the obligation sought to be enforced against the defendant. The plaintiff's statement of a cause of action must not be confused with his right to judgment. Whether judgment will ever result will depend upon the proof plaintiff offers in support of the cause he asserts and upon what defenses can be established against the cause of action asserted.

What defendant actually sought to establish on its motion was that the trial of the cause of action asserted would be no more than an idle ceremony since plaintiff must inevitably lose. Why? Because, it was asserted, under the "clear" words of the contract (the meaning of such words being established, as well, by the practical interpretation placed upon them over many years by the parties themselves) plaintiffs were not entitled to recover. The counter-affidavit disputed such contentions.

What defendant is really insisting is that it has ample defenses, not that no cause of action has been stated. Such matters are not triable upon affidavits upon a motion to dismiss. They go directly to the merits of the cause pleaded. They are controversies the resolution of which may well (nothing more appearing) control the right to judgment. As to them, plaintiffs are entitled to trial upon the merits, and, in fact, to a jury trial, should they so demand upon issue reached. Michigan Constitution (1908), art 2, § 13; Court Rule No 18, § 3 (1945). See, on corresponding equity practice, *Mathews* v. *United Association of Journeymen*, 351 Mich 293. In the case before us a cause of action was stated. The declaration speaks for itself.

Reversed and remanded. Costs to appellants.

Dethmers, C. J., and Carr, Kelly, Black, Edwards, Kavanagh, and Souris, JJ., concurred.